J-A27009-22 and J-A27010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JBRC OF PENNSYLVANIA, LLC AND JUST BELIEVE RECOVERY CENTER OF CARBONDALE, LLC | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | No. 98 MDA 2022 |
| | : | |
| PATRICK J. KELLY FAMILY TRUST, SAPIENT PROVIDENCE LLC, AND BRETON EQUITY COMPANY CORP. | : : : | |

Appeal from the Order Entered January 7, 2022
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2018-CV-02236

| | | |
|---|---|---|
| JBRC OF PENNSYLVANIA, LLC AND JUST BELIEVE RECOVERY CENTER OF CARBONDALE, LLC | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK J. KELLY FAMILY TRUST, SAPIENT PROVIDENCE LLC, AND BRETON EQUITY COMPANY CORP. | : : : | No. 223 MDA 2022 |
| | : | |
| | : | |
| APPEAL OF: PATRICK J. KELLY FAMILY TRUST | : : | |

J-A27009-22 and J-A27010-22

Appeal from the Order Entered January 7, 2022
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2018-CV-02236


BEFORE: DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED: FEBRUARY 28, 2023**

JBRC of Pennsylvania, LLC ("JBRC, LLC") and Just Believe Recovery Center of Carbondale, LLC ("Just Believe Recovery Center") (collectively, the "JB Entities") and Patrick J. Kelly Family Trust (the "Trust") each filed appeals from the January 7, 2022 order that struck a writ of execution entered in favor of Patrick J. Kelly Family Trust (the "Trust"), found that the JB Entities were entitled to a credit against money they owed to the Trust, and lifted a stay of the enforcement of an ejectment judgment. In its appeal, the JB Entities challenge numerous prior orders.[1] In the Trust's appeal, it challenges the court's decision to strike the writ of execution and to award the JB Entities a credit against the Trust's monetary damages. It also asserts that the appeal

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] These orders include: (1) the October 25, 2018 order sustaining the Trust's preliminary objections to three of five counts of the JB Entities' complaint; (2) the December 11, 2019 order entering judgment on the pleadings against the JB Entities as to the remaining counts in the complaint and in favor of the Trust on its four counterclaims, and entering judgment in ejectment against JBRC; (3) the July 31, 2020 order conditionally granting the JB Entities' request for stay relief on the judgment in ejectment; and (4) the June 14, 2021 order determining the monetary damages owed to the Trust on its counterclaims and modifying the conditions of stay relief.

- 2 -

that the JB Entities filed is untimely.[2]  After careful review, we quash the JB Entities' appeal as untimely and affirm in part and reverse in part the January 7, 2022 order.

The relevant facts and procedural history are as follows.  In September 2014, JBRC, LLC, purchased real estate formerly used as a hospital (the "Property").  JBRC, LLC, leased the Property to Just Believe Recovery Center which then operated a mental health and substance abuse treatment facility at the Property.[3]

On April 10, 2017, the JB Entities executed a second mortgage loan agreement ("Loan Agreement") with the Trust for $800,000.  The Loan Agreement established a repayment schedule that provided, *inter alia*, that the JB Entities would make their final payment on the mortgage approximately one year later, on April 9, 2018.  A Deed in Lieu of Foreclosure ("Deed") secured the mortgage and the Loan Agreement provided that the Trust could file the Deed in the event of default.

Relevant to the instant appeal, the Loan Agreement defined the failure to make a timely payment under the terms of the Note or the Loan

---

[2] We have consolidated these appeals *sua sponte*.

[3] On November 20, 2014, Just Believe executed a mortgage on the Property in favor of named-defendant Sapient Provident, LLC ("Sapient").  Sapient recorded the mortgage on November 25, 2014.  On February 26, 2018, Sapient assigned the mortgage to named-defendant Breton Equity Company Corp. ("Breton") for $550,000.

Agreements as an "Event of Default."[4]  The Loan Agreement provided remedies for an Event of Default which changed depending on when the default occurred.  The Loan Agreement specified that the failure to make all payments due under the Note "on or before the Final Payment Date [of April 9, 2018] shall constitute an Event of Default hereunder and shall entitle [the Trust] to all rights and remedies set forth herein, in the Note or in any [] of the other Loan Documents."[5]

The JB Entities failed to make payments as required by the Loan Agreement.  On February 13, 2018, the parties entered into a Forbearance and Release Agreement ("Forbearance Agreement").  In the Forbearance Agreement, the JB Entities acknowledged that it was in default of the Loan Agreement.  The parties agreed that, upon the JB Entities' payment of $50,000, the Trust would refrain from exercising any of its remedies that the Loan Agreement provided the Trust as a result of the JB Entities' default of the Loan Agreement.  The JB Entities also agreed to pay the Trust the $50,000 immediately.  In exchange, the Trust agreed that the JB Entities could remain in possession of the Property and the Trust would wait until March 15, 2018 to exercise any of its remedies.[6]  Of most significance, the JB Entities agreed to release the Trust from all obligations and liability under the Loan

---

[4] Loan Agreement, 4/10/17, at Art. VII ¶ 7.1.

[5] *Id.* at Art. VII ¶ 7.1(a).

[6] Forbearance Agreement, 2/13/18, at 1.

Agreement, including the obligation to wait until April 9, 2018, to file the Deed.[7]

The JB Entities did not cure their payment default during the forbearance period. Accordingly, on March 16, 2018, the Trust exercised its right to file the Deed.

**Procedural History Relevant to the Judgment against the JB Entities**

On April 13, 2018, the JB Entities filed a five-count complaint asserting that the Trust violated the terms of the Loan Agreement by prematurely recording the Deed.[8, 9] In particular, the JB Entities claimed that because it had not committed an "Event of Default" as defined in the Loan Agreement, the Trust "illegally" filed the Deed on March 16, 2018, "before the [f]inal [p]ayment [d]ate [of April 9, 2018] and in violation of the terms of the [] Loan [Agreement], despite [the JB Entities] having complied with the terms of the

_____

[7] *See id.* at 1-2 (releasing the Trust from "any and all obligations . . . held by [the JB Entities] . . . related to . . . the substance of the terms and obligations therein provided [in the Loan Documents].").

[8] In particular, the JB Entities asserted claims for: (1) breach of contract of the Loan Agreement; (2) unjust enrichment; (3) fraud in the inducement; (4) quiet title; and (5) injunctive relief.

[9] The JB Entities asserted their quiet title claim also against Sapient and Breton, and Sapient subsequently filed crossclaims against Breton and the Trust. Those claims have been resolved or withdrawn and Sapient and Breton are not parties to this appeal.

Forbearance Agreement."[10] The JB Entities concluded that through these actions, the Trust unlawfully acquired ownership of the Property.

The Trust filed preliminary objections to the complaint. On October 25, 2018, the trial court sustained two of the objections and dismissed those counts of the complaint. In particular, the trial court concluded that the Forbearance Agreement authorized the recordation of the Deed at any time after March 15, 2018. The court also concluded that "there was an acknowledged default by the Terms of the Forbearance [] Agreement and by the execution of the document and performance of its payment agreement by [JB Entities]."[11]

The Trust then filed an answer and new matter to the remaining counts of the complaint. The Trust also asserted counterclaims for: (1) a declaratory judgment that the JB Entities were precluded from obtaining any relief; (2) ejectment of the Recovery Center from the Property because the Trust did not have notice of the Recovery Center's lease with JBRC, LLC; (3) monetary damages for breach of the Forbearance Agreement; and (4) counsel fees and costs based on the Loan Agreement and/or 42 Pa.C.S. § 2503(6), (7), and/or (9).

The JB Entities filed preliminary objections to the Trust's counterclaims, which the trial court overruled on March 1, 2019.

---

[10] Complaint, 4/13/18, at ¶¶ 20-21.

[11] Trial Ct. Order, 10/25/18, at 3 (unpaginated).

On May 5, 2019, the parties filed cross-motions for judgment on the pleadings. Following a hearing, on December 11, 2019, the trial court entered judgment on the pleadings in favor of the Trust on its counterclaim and against the JB Entities on the remaining counts of their complaint. The court, thus, entered a judgment of ejectment against the JB Entities and in favor of the Trust. The court also entered a judgment of monetary damages against the JB Entities and in favor of the Trust, but, at that time, it did not fix the amount of monetary damages to which the Trust was entitled.

On May 6, 2020, the Trust filed a motion for assessment of monetary damages pertaining to the judgment in its favor on its breach of contract claim, including for the fair rental value of the Property and a request for attorney's fees.

Following a hearing on the motion, on July 31, 2020, the trial court granted the Trust's request for monetary damages. In particular, it ordered the JB Entities to pay the Trust an unspecified amount of counsel fees and directed the Trust to submit a proposed order for a money judgment consistent with its award of counsel fees.[12]

On August 31, 2020, the Trust submitted to the trial court a proposed order for the money judgment in its favor.[13]

_____

[12] The court did not award the Trust any monetary damages on its breach of contract claim.

[13] The Trust submitted the proposed order as part of the joint motion for clarification of the July 31, 2020 order discussed, *infra*.

On June 14, 2021, the trial court entered an order awarding the Trust $405,739 in monetary damages for counsel fees. Although this order resolved all of the claims of both parties by entering final judgments—one judgment for monetary damages and one judgment for ejectment—neither party appealed from this order.

**Procedural History Relevant to Enforcement of the Trust's Money Judgment**

On August 19, 2021, the Trust attempted to enforce its money judgment against the JB Entities by issuing and directing the sheriff's service of a writ of execution to PNC Bank where the JB Entities maintained a corporate account.

The next day, the JB Entities filed an emergency motion to stay and set aside the execution of the writ of execution on the money judgment.[14] They also filed a claim for exemption from levy and attachment of their PNC Bank account, alleging that the funds in the account were exempt from levy pursuant to 42 Pa.C.S. § 8127(a).

On September 15, 2021, the Trust filed a response to the JB Entities' motion to set aside the writ asserting, *inter alia*, that Section 8127(a) was inapplicable to the instant facts.

---

[14] The JB Entities claimed that the stay was warranted because the Trust failed to provide them with proper notice of the writ as required by the Rules of Civil Procedure and because the JB Entities' personal property was exempt from attachment. Motion, 8/20/21, at ¶ 13.

On January 7, 2022, the trial court entered an order striking the Trust's writ of execution that it had filed against the JB Entities' bank account at PNC. The court determined that the JB Entities' PNC bank account was exempt from execution pursuant to Section 8127(a) because the funds held therein were intended for the purpose of paying the wages of the JB Entities' employees.[15]

**Procedural History Relevant to Stay of Judgment of Ejectment**

Meanwhile, following the court's December 11, 2019 determination that the Trust was entitled to a judgment in ejectment, on January 3, 2020, the JB Entities filed a motion to stay the enforcement of the judgment in ejectment. The Trust opposed entry of a stay, but also argued that, if the court imposed a stay, it should order as a condition of remaining in possession of the Property that the JB Entities pay rent to the Trust.

On July 31, 2020, the trial court issued an order granting the JB Entities a stay from the enforcement of the judgment of ejectment on the condition that they pay rental payments of $20,000 per month to the Trust in addition to all taxes, maintenance, insurance, and utilities. The trial court also ordered that the Trust receive rental payments from the JB Entities' sub-tenants[16] and be responsible for all structural maintenance.

---

[15] As discussed, *infra*, the trust has filed an appeal from this order claiming, *inter alia*, that the trial court misapplied Section 8127(a).

[16] Wayne Memorial Hospital and Geisinger Medical Center were sub-tenants at the time and paid monthly rental rents of $9,920 and $1,807.58, respectively.

- 9 -

On August 31, 2020, the parties filed a joint motion for clarification of the court's July 31, 2020 order staying enforcement of the Trust's ejectment judgment. The parties sought clarification regarding, *inter alia*, which party should shoulder which of the maintenance expenses and utility fees on the Property and whether the award of rental payments from the JB Entities and their sub-tenants to the Trust was retroactive or prospective.

On June 14, 2021, the trial court issued an order clarifying the terms of the stay of the enforcement of the ejectment judgment. In particular, the court clarified the financial responsibilities of the parties with respect to the maintenance, taxes, and expenses arising from ownership and use of the Property. The court also explained that the JB Entities and their sub-tenants owed monthly rent payments retroactive to December 10, 2019—the date on which the court entered judgment in ejectment in favor of the Trust. The court further ordered that the stay of the enforcement of the ejectment judgment remain in effect until further notice.

On August 19, 2021, the JB Entities filed a motion for assessment of damages based on the alleged failure of the Trust to, *inter alia*, maintain the Property in accordance with the terms of the court order staying the enforcement of the ejectment judgment.

On September 15, 2021, the Trust filed an answer to the JB Entities' motions and asserted that it was the JB Entities who had not complied with the terms of the court's orders by failing to make monthly rent payments on and after April 2021.

On January 7, 2022, the trial court entered an order finding that the Trust had failed to maintain the Property in the condition that the trial court had ordered when it stayed the execution of the ejectment judgment. Therefore, the court concluded that the JB Entities were entitled to an offset of $299,746.71 against the money it owed to the Trust.

It is from this order addressing the conditions of the stay of the enforcement of the ejectment judgment that both parties filed their notices of appeal. They and the trial court complied with Pa.R.A.P. 1925.

**A.**

In its appeal, JB Entities raise the following issues for our review:

1. Did the trial court err when it sustained the [Trust's] preliminary objections to Count I (breach of contract) of [the JB Entities'] Complaint upon finding that the [Deed] was not prematurely filed, when the Deed was recorded prior to the Final Payment Date and contrary to the Non-payment provisions in the applicable loan documents?

2. Did the trial court err when it sustained the [Trust's] preliminary objections to Count II (unjust enrichment) of [the JB Entities'] Complaint when the Deed was recorded before the Final Payment Date and not other "Event of Default" occurred to justify the [] Trust recording the Deed?

3. Did the trial court err when it sustained the [Trust's] preliminary objections to Count III (fraud in the inducement) of [the JB Entities'] Complaint when the [] Trust made misrepresentations regarding the Forbearance [] Agreement?

4. Did the trial court err by granting the [] Trust's Motion for Judgment on the Pleadings when the [] Trust recorded the Deed prior to the Final Payment Date set by the applicable loan documents?

5. Did the trial court err by denying [the JB Entities'] Motion for Judgment on the Pleadings when the [] Trust recorded the

Deed prior to the Final Payment Date as set by the applicable loan documents?

6. Did the trial court err by awarding attorney's fees, monetary damages[,] and rent to the [] Trust based upon the above-referenced prior findings?

JB Entities' Brief at 14-15.

The Trust raises the following issues on appeal:

1. Did the lower court erroneously strike a writ of execution that was served on a bank account?

2. In determining a "credit against monies owed by [the JB Entities] to the [] Trust," did the lower court make an untimely and incorrect determination of the amount remaining to be paid in order to satisfy an award of counsel fees or did it make an irrelevant determination as to the extent to which [the JB Entities] had complied with the conditions of a stay order pertaining to enforcement of a judgment in ejectment, the term or effect of which had expired?

3. Assuming that the determinations made in the June 14, 202[1 o]rder are subject to appellate review, did the lower court fail to address the [] Trust's motion for assessment of damages on its counterclaims and properly calculate the extent of damages sustained by the [] Trust as a result of [ the JB Entities'] failure to abide by the terms of the [Forbearance] Agreement?

Trust's Appellant Brief at 4-5.[17]

**B.**

Before we reach the issues presented by the parties, we must first determine whether we have jurisdiction over the JB Entities' appeal, which

_____

[17] On March 10, 2022, the Trust filed an application to dismiss the JB Entities' appeal as untimely. On May 5, 2022, this Court denied the Trust's application to dismiss without prejudice to the Trust to re-raise the issue of timeliness in its brief to this Court. In the Trust's briefs—one filed as appellant and one as appellee—the Trust has reasserted its argument that we should quash this appeal as untimely. *See* Trust's Appellee Brief at 13-19; Trust's Appellant Brief at 4, 15-19.

challenges the trial court's imposition of a monetary judgment and a judgment of ejectment against the JB Entities and in favor of the Trust.

A final order is, *inter alia*, one that "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1). For an appeal to be timely, the appealing party must file a notice of appeal within thirty days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). The failure to do so results in waiver of review. **See Morningstar v. Hoban**, 819 A.2d 1191, 1194 (Pa. Super. 2003) (reiterating the well-established principle that "the failure to file a timely appeal will divest this Court of jurisdiction.").

Relevant to this consideration, we reiterate that, following the court's orders of October 25, 2019, December 11, 2019, and July 31, 2020, the trial court entered an order on June 14, 2021 that fixed the amount of attorney's fees owed to the Trust. At this point, the Trust had obtained both a judgment of ejectment in its favor and against the JB Entities and an ascertained monetary judgment in its favor and against the JB Entities. Thus, as a result of the June 14, 2021 order, the Trust had a final order that granted the Trust a judgment in ejectment and a monetary judgment in its favor and against JB Entities. The JB Entities failed to appeal the entry of these judgments within thirty days of the entry of the final order and, thus, we now lack jurisdiction to review any challenges to them.

The JB Entities argue, however, that the final order in this matter was not the order imposing the monetary judgment and the judgment in ejectment, but rather the order that concerned the Trust's attempts to execute

its judgments. The JB Entities have provided us with no legal authority, and we have found none, that tolls the appeal period until a party who holds a judgment against another party attempts to execute on the judgment. Rather the case law is clear that a judgment is a final order from which a party must appeal. The execution of that judgment is a separate and distinct proceeding.[18]

Because the JB Entities failed to appeal from the June 14, 2021 final order within thirty days as required by Pa.R.A.P. 903, the JB Entities lost the

---

[18] We observe that, because a party who holds a judgment may execute on it at any time, or not at all, it defies reason to toll the period for challenging the underlying judgment until the party who holds it decides, in its discretion, to execute on it.

right to challenge the underlying judgments.[19, 20]  We, therefore, quash the JB Entities' appeal.[21]

## C.

With respect to the Trust's appeal, the Trust first asserts that the trial court erred when it concluded that the JB Entities' PNC Bank account was exempt from execution for purposes of enforcing their money judgment and as a result, struck the writ of execution that the Trust had served on PNC. Trust's Brief at 19-20.  The Trust argues that the statute that the trial court relied upon only exempts from attachment those bank accounts that consist of "wages, salaries and commissions of individuals" when the judgment is

_____

[19] We note that if the JB Entities had raised any issues challenging the January 7, 2022 order awarding it a credit, striking the Trust's writ of execution of the money judgment, and lifting the stay of the judgment of ejectment, those challenges would have been timely.  The JB Entities, however, only challenged the underlying judgments.

[20] The trial court noted that the January 7, 2022 order striking the Trust's writ of execution, awarding the JB Entities a credit, and lifting the stay of the judgment of ejectment was a "final order."  We agree that the order is final as to its contents, *i.e.*, the court's decision to strike the Trust's writ of execution against the JB Entities' bank account, to award the JB Entities a credit, and to lift the stay preventing the Trust from enforcing the judgment of ejectment.  The January 7, 2022 order was not, however, final as to the underlying judgments; rather, as discussed*, supra*, the court had entered the final order disposing of the claims between the parties regarding the judgments themselves nearly seven months earlier on June 14, 2021.

[21] Even if the JB Entities had timely appealed the underlying judgments, we would conclude that they are not entitled to relief as, pursuant to the terms of the Forbearance Agreement, they admitted they were in default of the Loan Agreement and released the Trust from liability and any of the obligations set forth in the Loan Agreement, such as the date upon which the Trust was authorized to file the Deed.

against an employee who has a right to those "wages, salaries and commissions of individuals." ***Id.*** (citing 42 Pa.C.S. § 8127(a)). The Trust further argues that the statute does not apply to the instant facts because the Trust's judgment is not against an individual employee, but the JB Entities, corporate entities. ***Id.*** at 19. We agree.

This issue implicates the interpretation of Section 8127 of the Judicial Code titled "Personal earnings exempt from process." 42 Pa.C.S. § 8127. Statutory interpretation is a question of law, therefore, our standard of review is *de novo*, and our scope of review is plenary. ***Brown v. Levy***, 73 A.3d 514, 517 (Pa. 2013).

Section 8127(a) provides, in relevant part, that the "wages, salaries and commissions of **individuals** shall while **in the hands of the employer** be exempt from any attachment, execution or other process[.]" 42 Pa.C.S. § 8127(a) (emphasis added). The defense to the execution on a money judgment does not apply where, *inter alia*, the judgment arises in a divorce or support action. ***Id.*** at 8127(a)(1)-(3).

In discussing the application of Section 8127(a), this Court has observed that "[t]he defense of exemption of wages is designed to protect the wage earner." ***Jefferson Bank v. J. Roy Morris and Scanforms, Inc.***, 639 A.2d 474, 477 (Pa. Super. 1994). ***See also E. Lithographing Corp. v. Neville***, 198 A.2d 391, 393 (Pa. Super. 1964) ("The obvious purpose of the act is to protect earnings[.]") (citation omitted)). Thus, in deciding whether funds are exempt from attachment or garnishment pursuant to Section 8127(a), the

court must consider, *inter alia*, whether "the garnishee is an employer of the judgment debtor." ***Id.***[22] In other words, the statute applies when a creditor seeks to execute on a judgment against a debtor by garnishing the debtor's wages from the debtor's employer. Here the Trust holds a monetary judgment against a corporate entity, the JB Entities, and not against an individual. The language of the statute is clear that the exemption from garnishment applies only to judgments against individuals. This conclusion is further supported by the exceptions to the statutory defense—they apply in situations that could only pertain to individuals, *i.e.*, judgments obtained against a spouse or parent in domestic relations cases.[23]

Accordingly, the trial court erred in determining that the JB Entities' PNC Bank account was exempt from execution and erred in striking the writ of execution that the Trust served on the JB Entities' PNC bank account. We, therefore, reverse the portion of the order striking the writ of execution.

In its next issue, the Trust claims that the trial court erred in awarding the JB Entities a "credit" against the monetary judgment entered in favor of the Trust. Trust's Brief at 20-23.

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of

---

[22] A "garnishee" is one who has money or property in its possession belonging to a judge debtor.

[23] Additionally, the JB Entities' PNC Bank account is not "in the hands of" an employer of a person against whom there is a judgment as required to invoke the statutory defense.

pertinent authority." ***Commonwealth v. Martz***, 232 A.3d 801, 811 (Pa. Super. 2020) (citation and bracketed language omitted). ***See*** Pa.R.A.P. 2119 (listing argument requirements for appellate briefs). This Court "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) (citation omitted).

In its Brief, the Trust fails to provide an adequate legal framework within which this Court can conduct meaningful appellate review. In the Argument section of its Brief, the Trust has not provided citation to any legal authority to support its argument. Because the Trust has not supported its claims with discussion and analysis of pertinent authority, this Court is unable to evaluate whether the trial court erred in awarding the JB Entities a credit against the Trust's monetary damages. Accordingly, we conclude that this issue is waived and we, thus, affirm that portion of the January 7, 2022 order.

In the Trust's final issue, it asserts that when the trial court entered the monetary judgment in its favor, the court failed to "properly calculate the extent of damages sustained" by the Trust as a result of the JB Entities' breach of the Forbearance Agreement. Trust's Brief at 24-25. Because this issue, like the issues raised by the JB Entities in their appeal, arises from the court's order entering a monetary judgment in favor of the Trust and against the JB Entities, the Trust was required to challenge the amount of the monetary

judgment within thirty days of entry of that order. The Trust did not do so. Accordingly, this claim is waived.

JB Entities' appeal, docketed at 98 MDA 2022, quashed. Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2023